oral argument not to exceed 15 minutes per side. Ms. Pahal for the petitioner, appellant. Morning. Morning, Your Honors. May it please the court and counsel, Tasha Pahal, appointed counsel for Mr. Davenport. If permissible, Your Honors, I'd like to reserve three minutes for rebuttal. Thank you, Your Honors. There is no dispute in this case that Mr. Davenport's constitutional due process rights were violated when he was visibly shackled throughout his trial. Given that undisputed violation, the only question here is whether the shackling error had a substantial and injurious effect or influence in determining the jury's verdict. There are a number of factors that courts look to in determining whether that standard of actual prejudice has been met. And in this case, they all weigh in favor of granting habeas relief. In fact, the first two factors so heavily weigh in Mr. Davenport's favor that the state doesn't even contest them. The state does not contest that Mr. Davenport's shackles were visible and extensive, and nor does the state contest that Mr. Davenport was charged with a violent crime. The shackles in this case essentially branded Mr. Davenport as having a violent nature and destroyed his presumption of innocence. Thank you, by the way, for taking this case. Is that what the jurors said after the trial? Your Honor, the jurors in this case provided testimony at an evidentiary hearing three years after the trial concluded. In their testimony, over half the jurors revealed that they were aware that the defendant was shackled. Five had actually seen the shackles. Some saw the ankle shackles. Some saw the belly shackles. Some saw the handcuffs. Two more jurors heard comments made by another juror to the effect that the shackling, that the defendant was restrained throughout the trial. So you can say that that had no influence on their verdict and that they thought that that was their standard procedure? They certainly testified that they thought the shackles were routine. They also testified that they viewed the defendant as dangerous. The fact that they didn't... After a long trial, when they heard about the defendant, potentially, in their view, he did strangle someone. So I think your Honor's question is getting at the fact that the jurors did not stand up in open court and say, you're right, the shackles had some effect on me. I viewed the defendant as more likely guilty because he was shackled. They certainly did not say anything to that effect. And I think the law recognizes the reasons why they didn't say anything to that effect. The Supreme Court, in both Holbrook and then later in DEC, reiterated that the reason why shackling is so prejudicial is because it affects the subconscious minds of the jury. The jurors are not cognizant of the fact that seeing a defendant shackled likely undermines their ability to fairly evaluate the character of the defendant or fairly evaluate the evidence. If the jurors had said, yes, the shackling was a significant factor in our decision, you would accept that testimony as evidence that habeas relief would be appropriate, right? I think that's right. I think if... So we have the opposite case here where the jurors are saying, actually, it didn't impact our verdict at all. And not all of them saw it, but the ones who did say it didn't impact our verdict. We don't credit that the same way? I think that's fair, Your Honor. I think the reasoning is, given the case law and the Supreme Court's recognition of what shackling does to the subconscious minds of the jury, if a juror is able to recognize the implicit bias and testifies to it in court, that's certainly relevant to a standard of actually prejudice. So DEC, one of the main points of DEC, I think, was maybe the point you're making, but also the point that the shackles would restrict the defendant's ability to participate in his trial or her trial. Now, that didn't happen here, right? The defendant, one, had an arm available to take notes and to communicate with his counsel, and then also was able to testify without shackles. The Supreme Court in DEC recognized a number of reasons as to why shackling is unconstitutional. On the one I just identified, that's not a concern here. There's no testimony to that effect from the defendant that he was unable to communicate with his counsel. There was some testimony at a prior evidentiary hearing when he had some difficulty writing, but that certainly wasn't an issue at the trial. He had one hand uncuffed so that he could write. One of the jurors, I will note, in the evidentiary hearing recognized that it looked like he struggled a little bit while writing, and that's why he recognized he was shackled. But certainly there was no testimony from the defendant that he could not communicate with his lawyer for that reason. But the other factors identified by the court in DEC are certainly relevant. And the Supreme Court in DEC recognized that the shackling itself is so inherently prejudicial, and it undermines the presumption of innocence. And I think here that is one of the key factors that weighs in terms of evaluating whether there was harmless error or not. And several jurors here did testify that they thought that Davenport might be more dangerous, or be dangerous, because he did have these shackles on. Is that correct? That's absolutely correct, Your Honor. There were three jurors, Vanderveen, Watley, and Jankard, I believe, who testified that they viewed the defendant as dangerous. And they viewed that in light of the fact that he was charged with first-degree murder and shackled throughout his trial during his first-degree murder trial. Do you concede that there was overwhelming evidence that your client's claim of self-defense was disproven? We certainly do not concede that, but I also don't think that's the question before the court today. I think the standard in Brecht makes it very clear that the question before the court today is whether there was overwhelming evidence of the crime of conviction and the jury's verdict. And that is first-degree murder. If there was not overwhelming evidence as to first-degree murder, and there was overwhelming evidence as to second-degree murder, and the writ was granted, is the remedy to have a new trial, or is the remedy to allow sentencing based on the second-degree murder charge? So I understand your honor to be asking that if the jury was only charged with second-degree murder and a self-defense instruction, and there was overwhelming evidence as to second-degree murder, what should the remedy be here? I think that it's likely a question for the state court to decide in terms of a new trial and a new jury evaluating that evidence under that circumstance. And to your honor's question, I certainly don't believe there was overwhelming evidence of first-degree murder in this case. How do you distinguish your case from People v. Johnson? That Michigan Supreme Court case which upheld a first-degree murder conviction in what I thought were very similar circumstances. You had a strangulation, you had defensive wounds, you had the fact that the defendant knew the victim beforehand. And we obviously defer to Michigan law in terms of how they interpret their murder statute, their murder laws. Absolutely. So Michigan law has said on multiple occasions that the fact of strangulation and the amount of time that passes between when a victim loses consciousness and ultimately passes away is not sufficient on its own. I agree, but Johnson actually said that that is evidence that there was time for reflection, and then it went on to say uphold a conviction for first-degree murder with some additional factors which I think are all present here. So your honor, I agree that the fact of strangulation may be used as some evidence of premeditation, and I think this court identified the key time frame in its certificate of appealability as the five minutes in the car ride from when the defendant and the victim left their friend's house to when the victim passed away in the car. And during that evidence in this case, the evidence was really limited to the testimony of the medical examiner, and that testimony that he provided was the four to five minute time frame, and that's the testimony that the prosecutor at trial solely relied on in his closing argument to argue for first-degree murder, either over second-degree murder and in rejecting the self-defense theory. What evidence would the prosecutor rely on when the defendant himself said he was a liar and for him to tell the truth wouldn't help his case? What other evidence would the prosecutor have relied on other than that medical? The defendant sort of has qualified himself in many ways in terms of being a believable witness. Well, certainly the defendant's credibility in terms of whether the jury believed or did not believe his self-defense theory may be relevant to determining whether – that's not relevant to determining whether it's overwhelming evidence of first-degree murder. That's a separate question as to his self-defense theory. But I think there, as the judge instructed the jury, kind of the hallmark of first-degree murder is planning, and the judge instructed the jury that to find the defendant guilty of first-degree murder, he would have had to have thought about beforehand killing this victim. There wasn't any evidence in this case that he had a preconceived plan to kill this victim. And you could imagine a situation where there is evidence that a prosecution could rely on. There could be evidence that he talked to someone about his plan, that there were eyewitnesses, as is the case in some of the other cases cited by counsel on the other side. There was evidence that he had strangled someone previously, right? And that he told people that was one of the things he sometimes did. There's certainly disputed evidence at trial that he had previously choked another woman, not to death in that case. That type of evidence, I submit, just exasperates the shackling error here. I submit that a jury would hear that, would then look at a defendant who was heavily and extensively restrained at trial. So the more evidence of his guilt, the worse the shackling is? So he can never overcome the shackling? No, I don't think that's true, Your Honor. I do think that where the government makes his propensity for violence a major issue at trial, and he is also unconstitutionally shackled, you have to look at the overwhelming nature of the evidence or not in light of these other factors. And where his propensity for violence has been made a central feature of this case, and the evidence is circumstantial and very much limited to the medical examiner's testimony about the amount of time that passed, given Michigan case law that says that's not enough on its own, I think that certainly is a relevant factor to look at. The testimony of the medical examiner in this case, the four to five minutes, I know that the government focuses on it extensively. I do think that also needs to be reviewed in the context of the facts of this case, which is this is not a case where the defendant was standing over the victim watching a clock go. The defendant was distracted and driving during that time. And the medical examiner also offered testimony that several common injuries suffered in strangulation cases which might show brute force and might be more likely to lead to a jury finding first-degree murder were not relevant here. So just as a few examples, there was no injuries to the external portions of the neck, no injuries to the larynx, no injuries to the trachea, no injuries to the vocal cords. The jury could hear this evidence from the medical examiner and certainly find that the elements of first-degree murder were not met. And where the evidence is not overwhelming, Your Honor, I submit that habeas relief is warranted here. And certainly to Judge Strachan's question, a state court could decide whether a new trial and a new jury could evaluate the second-degree evidence, second-degree murder. I probably cut you off earlier, but is that the fact that distinguishes this case again from Johnson, which I think is really on all fours of our cases, that the medical evidence wasn't as strong here? The medical evidence is certainly different, Your Honor. And my memory in Johnson is that I don't believe the jury was also instructed on a second-degree murder case. And the procedural posture is also slightly different. If Your Honors have no further questions, I'm happy to answer more questions on rebuttal or now, whichever you prefer. We'll wait for your rebuttal. Thank you very much. Good morning, Your Honors. May it please the Court, Jared Schultz, Assistant Attorney General for the State of Michigan, on behalf of the respondent in this matter. The jurors in Irvin Davenport's case heard significant and overwhelming evidence that he deliberately killed Annette White by strangling her to death, putting significant pressure on her neck for several minutes before she died. Although the state courts later found that Davenport was improperly shackled during the trial, all of the state courts found that that error was harmless. Indeed, given the overwhelming evidence of guilt, along with all 12 juror testimonies, testimony from all 12 jurors, that they did not believe that shackling had any effect on their verdict, Davenport has not... Hasn't that issue already been addressed in the case law, that the juror's statement that shackling has no impact on them is so undercut by both case law and rigorous scientific information about implicit bias? So why would their statements that didn't know it didn't impact us carry the day? Well, Your Honor, I would say that, first of all, these jurors sat through an eight-day trial where they were able to evaluate the evidence and what they saw and testify to what they saw. Also, I would note that to the extent that Holbrook talked about how you can't look at juror testimony or its insignificant factor, first of all, Holbrook didn't deal with a harmlessness determination. Holbrook was dealing with whether there was a due process violation at all. Here we know that there was a violation. We're just dealing with harmlessness, which is what Deck said. You can overcome the violation by showing harmlessness. Deck never said that you can't look at juror testimony. Also, I would point out that Holbrook is distinguishable because the juror testimony in that case was during voir dire, and Holbrook, during juror selection, Holbrook specifically said that we can't take much stock into the juror testimony because we don't know what the jurors, when they testified, they had no idea how the seeing, in that case there was several officers sitting behind the defendants, they had no idea how seeing that play out during the course of a long trial would have affected their decision on that case. Here, that's not the case. We have, this testimony occurred after trial. They knew exactly how, to the extent anyone saw shackling or restraints, they knew exactly how that affected their verdict, and that was that it didn't play. If it's implicit bias, how could they know? Well, Your Honor, that's a fair point, but I think that there's no, it's important to remember this is on habeas review, and there's no Supreme Court law that says you cannot consider juror testimony in this case. I understand your point about implicit bias, and that's fairly taken, but I don't think it was unreasonable in this case for the trial court to consider that testimony when it ultimately decided there was harmless error. Well, Roulas teaches that it's the Brecht standard that applies, correct? I'm sorry, what? Roulas teaches that it's the Brecht standard, so the question we ask is did the constitutional error have a substantial and injurious effect on the jury's verdict? Correct, but I don't think we throw out AEDPA's standard here. Well, but doesn't Brecht, Roulas says Brecht is always the test. Correct. There's no reason to ask both Chapman's AEDPA question and Brecht. Brecht is the test. Correct, but there's, Brecht is the test, but the Supreme Court in Davis said that we also, you can't throw out the fact that this is under AEDPA review here and that we still have to defer to the standards. And how does Davis conclude? Davis concludes that reiterating that the Brecht test subsumes the limitations imposed by AEDPA. Correct, you're correct. So it's the Brecht test. It is, Your Honor, and I would say that it is the Brecht test, and Davenport, regardless, has not proven that there is a substantial and injurious effect on the verdict in this matter. Again, going back to the juror testimony, all 12 jurors decided that they, or testified that they based their decision on the evidence only. All 12 jurors testified that shackling was not discussed in deliberations. And I'd like to briefly go back to something that. But they do testify that they discussed it among themselves, right? Isn't there some testimony about one of the jurors saying to the other juror, you were sitting near the stand and he wasn't wearing the shackles? Weren't you scared? Yes, I believe there was testimony about that, and there was also some comment made, oh, didn't you see he was handcuffed or something like that. I do believe that one or a couple of the jurors testified that these comments were very fleeting. It was very brief. It just mentioned, oh, hey, didn't you see that? And all those jurors then testified, but it was never discussed during deliberations. And I would like to point out what opposing counsel said, that we don't contest that there is extensive shackling in this case. I don't think the state has conceded that. There was extensive shackling. It's a handcuff. It's a belly chain and ankle, right? Correct, Your Honor. What more could they have put on him? You're right. What he was in was extensive, but what the jurors saw was not extensive. Only two of the jurors said that they even might have seen leg restraints. I think one equivocated on whether he saw it. But all the other jurors said they only saw him in one handcuff. They didn't say they saw leg shackles as well or a belly chain as well. Am I misunderstanding your argument? Aren't we beyond the question of whether it's a constitutional violation for them to have seen that kind of shackling on a defendant? Correct. I just think that that goes to whether we can take much stock into the jurors' testimony on whether it had no influence on their verdict is to what extent he was shackled. And I would just, I guess it's a, you're right, it's a point that we're a little bit beyond, but just to the extent that there was any shackling, it was, I just point out, it wasn't extensive that they saw. I'd like to go to the overwhelming evidence of guilt in this case, which also helps show why this was a harmless error. Significantly, Mr. Davenport confessed that he killed this victim, and the medical examiner testified that it takes four to five minutes of putting significant pressure on the victim's neck before someone is deprived of air for so long that death results. And significantly, the medical examiner testified that it could take only 30 seconds before that person loses consciousness. Doesn't, isn't Michigan case law express on the distinction of strangulation? The case law, as I understand it in Michigan, says strangulation and the brutal nature of the killing are not sufficient evidence of premeditation alone. That's correct, Your Honor, but Michigan case law also says that it can be used as a factor to determine whether the defendant had an opportunity to take a second look. And in this case, I think- I understood the Michigan case law to be a second look outside the act of strangulation itself. No, I don't believe that's correct, Your Honor. I think it's the fact of strangulation itself, you can look at that and determine whether the defendant had an opportunity right then to take a second look. I think that's pretty clear here that if he took at least four to five minutes to strangle this victim, he had an opportunity to take a second look to decide- Then Michigan case law is wrong because it always takes four to five minutes. That was the expert testimony, to strangle somebody. So then strangulation alone would be evidence of premeditation because anyone who holds someone's neck for four minutes has the opportunity to take a second look. But that's not what Michigan law says. Well, I don't think it says that anyone has an opportunity in four or five minutes. I think that's very significant evidence that in four or five minutes you can take a second look. Then you disagree with Michigan law, which says that this brutal nature and strangulation itself is not evidence of premeditation. I don't disagree. No, Your Honor, I don't disagree. I think it's a factor. I agree with Michigan case law that it's a factor. And here it's a factor that he took four to five minutes. It's a factor to look at to see if he took a second look that he preplanned this crime. And I would also point out that there's other circumstantial evidence as well in this case that shows that he premeditated this killing. There's testimony from another victim who said just, I believe it was a week before this murder occurred, that she was strangled by Davenport too and that she lost consciousness as well and that the only reason that he stopped was because someone else intervened. So the fact that two strangulations occurred in such a short time period goes to show that this was not a spur-of-the-moment decision to strangle someone out of self-defense. This was a preplanned decision. He also told another witness testified that he said if there was any problem with anyone, he would choke that person. And then he ultimately confessed. I killed Annette White. He confessed that to this other witness. He confessed it to the police. When he confessed it to this other witness, he didn't say anything about self-defense. He said that she didn't give him something and that's why he strangled her. So all of that evidence put together, taken together, goes to show why this was an overwhelming case, overwhelming evidence of guilt in this case. Again, I don't want to touch on all the evidence in this case, but just to briefly also point to a couple of circumstantial facts of the prosecution, how they show premeditation. The petitioner said that he killed this victim in self-defense, but he didn't call the police. He disposed of the body. He got rid of evidence. He stole something from the victim's apartment right after, or not right after, but after the murder. Why is that evidence of premeditation rather than just depravity? It in and of itself is not evidence of premeditation, but that all put together with the medical examiner's testimony, with the testimony from the other victim in this case, who she said she was also strangled to unconsciousness, with the testimony from the police officers that he gave three different stories to them, all of that put together I think can show premeditation, and I believe it was overwhelmingly shown. Can't it just show second-degree murder? I'm struggling with why you think that makes the premeditation leap, because I thought his testimony was that, or the testimony in the case was that, this woman gets high on whichever drug she took and becomes a fighter, and they ask her to leave the house because she was causing trouble, and he took her in the car and she was jerking the wheel and pulling out a weapon, and then he pinned her head, and then when he let go she came at him again. Help me understand why that factual scenario reaches premeditation. It reaches murder, but how does it reach premeditation? Well, first off, I'll point out, and I don't think this is completely dispositive, but this case was about whether it was first-degree murder or whether there was self-defense. The defense in this case never, in his closing argument, never even mentioned whether there was premeditation or not. He strictly focused on whether it was self-defense. But there were two charges. Well, there was two instructions. There was a second-degree murder. There was a second-degree. Correct. And to go more directly to your point, all that Michigan requires is an opportunity to take a second look. Here in this case you mentioned that he had her pinned, but the medical examiner testified that that couldn't have been possible with her injury. She had hemorrhaging to both sides of the neck, not broadly across her neck. So I think that his self-defense claim, or his claim that he had her pinned, is completely undermined by the medical examiner's testimony in this case. And, again, all that requires is an opportunity to take a second look. By a second look, you mean, is this something I really want to do? Correct. And within – If you shoot someone with a gun, there's no chance for a second look if you've killed them with the first bullet. Right. Correct, Your Honor. And within, again, the four to five minutes that it would have taken to strangle this woman to death, he had an opportunity to take a second look, along with evidence that he strangled someone beforehand, meaning this is a planned-out thing, he knows what he's doing. Is there a case – I assume you think Johnson's a relevant case here? Yes, correct. Is that the controlling case we should look to? Are there other cases? I believe it's the most relevant case here. Just because, again, the second look is important in this case, and I believe there's clearly evidence that he took a second look. And I see my time is up. Unless there are any further questions, I would ask that this Court affirm the District Court's decision. Okay. Thank you, Mr. Shanks. Thank you, Your Honors. Three points on rebuttal. I'll take them in the order which my brother counsel addressed them. First, regarding the juror testimony, he tried to draw a distinction between the courts holding in Holbrook and claiming that the testimony in that case was at the Verdeer context as opposed to after the fact evidentiary testimony about the effect of the shackling. The reasoning that applies in that case does not make it specific to Verdeer. And, in fact, there's another case, the Rodin case in the Ninth Circuit, where the magistrate judge in that case held an evidentiary hearing, made a specific finding that the defendant was shackled, that the shackles were seen, but were not discussed during the deliberations, and made a finding that the shackles made, quote, little impression on the jurors. The Ninth Circuit issued habeas relief in that case, and it was irrelevant to them, that the jurors were not able to articulate the implicit bias that resulted as a result of the unconstitutional shackling. Can I ask you what second look means to you? I see that term in the Johnson case, and I asked your friend on the other side. What does second look mean to you? Yeah, no, I understand the question. I think the law does say first-degree murder requires an opportunity to take a second look. That opportunity to take a second look is something more than intent, right? It's a premeditation element that requires something more than intent and malice. The cases that discuss it say that the defendant could stop in the middle or something. Here, the defendant actually did try to stop in the middle, as Judge Stretch pointed out. He testified at trial that he let go of the victim, and she continued to fight back. She continued to kick him, try to grab the wheel. So he continued to hold her back until they got to their location. That is entirely consistent with his self-defense and is also consistent with second-degree murder. Actually, like Johnson, where there were evidence of wounds on the defendant caused by the victim, and the Michigan Supreme Court there still said that defendant had time to take a second look. Yeah, there's another case that we also cite in our brief where the defendant in that case, there was testimony that the victim was stabbed, I think, 17 times, and the argument was that after any one of those 17 times, the defendant could have stopped to, quote, take a second look. But the court said that that fact on its own wasn't sufficient to establish premeditation. Is that a Michigan Supreme Court decision? It was a Michigan case, yes, Your Honor. It's cited in our brief. Supreme Court? I don't remember off the top of my head. Court of Appeals case from 1971. I think it was a Court of Appeals case, yes. Hoffmeister is my memory as to the name of that case. The second thing that my brother counsel talked about was the Brecht Standard. I think it's right. I don't think it's that controversial that Brecht applies and subsumes the AEDPA inquiry. They said it in Ruelas. The Supreme Court reiterated it in Davis, and the Sixth Circuit has actually repeated it after Davis in Sheard v. Klee, K-L-E-E case. Davis could have been a little more clear on this. All of us. And then as to strangulation being used as a factor to take a second look, I don't believe that the circumstantial evidence here that the state points to as to the defendant's conduct after the crime fills the gap as to the crucial time period to establish premeditation during the four- to five-minute time span we're talking about. And I think that the government's argument here is asking this Court to find that in every case of strangulation, not only is there sufficient evidence, but there's overwhelming evidence. And there's just no support for that. The standard here requires there to be overwhelming evidence of premeditation, and simply relying on the medical examiner's testimony during that time period, I submit, is not overwhelming evidence. In closing, I just would like to reiterate the significance of the constitutional violation here, and how much it infringed on Mr. Davenport's presumption of innocence and right to a fair trial. His shackles essentially branded him as having a violent nature and destroyed the jury's ability to fairly evaluate his character and the evidence. That constitutional error can only be found harmless if there was overwhelming evidence of premeditation, and none of the prior decisions from the state courts or the district court here talk about that distinction between first- and second-degree murder. They say overwhelming evidence of, quote, guilt, and I submit that's not the right standard, and that's not enough here. Because the jury's word is not supported by overwhelming evidence, we ask that habeas relief be issued in this case. Okay, thank you, Ms. Vahal. Thank you very much. Well, I want to thank both of you for your arguments this morning, as we've done with the earlier attorneys in cases, and Ms. Vahal, as we've noted earlier, we do want to thank you and your law firm for taking on this case under this Criminal Justice Act. My pleasure, Your Honor. Thank you. It's very much a service to Mr. Davenport and to our system at large, and from my perspective, you've done just a very fine, extremely fine job today, as have you, Mr. Schultz, and it makes our job at least a little bit easier in tough cases like this. So we do thank you for taking on this case, and the same for your co-counsel sitting at the counsel table. So anyway, the case will be submitted, and that, I think, completes our argument calendar.